763 So.2d 956 (2000)
SUMMIT PHOTOGRAPHIX, INC.
v.
Curtis SCOTT.
1971819 and 1981170.
Supreme Court of Alabama.
February 11, 2000.
*958 J. Eric Anderson of Simmons Brunson & Associates, P.A., Gadsden; Charles E. Vercelli, Jr., Todd E. Hughes, and Stacy A. Linn of Nix, Holtsford & Vercelli, P.C., Montgomery, "of counsel", for appellant.
James W. McGlaughn of Inzer, Haney, Johnson & McWhorter, P.A., Gadsden, for appellee.
BROWN, Justice.
Summit Photographix, Inc. ("Summit"), appeals from an order denying its Rule 55(c), Ala. R. Civ.P., motion to set aside a $500,000 default judgment, and an order denying its Rule 60(b), Ala. R. Civ.P., motion for relief from that judgment. The judgment was entered in favor of Curtis Scott.
Summit was a Texas corporation that produced baseball trading cards. Summit enlisted "representatives," such as Curtis Scott, to sell "vouchers" for these cards to customers. After purchasing a voucher from a representative, the customer would send the voucher to Summit's headquarters in Dallas, together with the applicable shipping and handling fees. Upon receiving the voucher, Summit would redeem it and send the customer the specified card.
In February 1997, Scott paid a start-up fee of $214.92 to become a Summit representative, so that he could sell the redeemable vouchers for profit. Scott also purchased approximately $3,000 in inventory and promotional materials from Summit. Thereafter, Scott began selling the vouchers. On June 6, 1997, Summit encountered problems with several of its key vendors and was forced to cease operations. As a result, Scott was no longer able to sell the vouchers, and he had to issue refunds to several customers after Summit failed to redeem their vouchers.
Scott sued Summit, alleging breach of contract, fraud, misrepresentation, conversion, negligence, and wantonness. Because Summit failed to answer or otherwise defend, Scott applied for a default judgment against Summit. Accompanying Scott's application for a default judgment was an affidavit by Scott stating that Scott was due $250,000, plus costs. After conducting a hearing on Scott's motion, the circuit court entered a default judgment awarding Scott $500,000 in damages. Pursuant to Rule 55(c), Ala. R. Civ.P., Summit moved to set aside the default judgment; with its motion it filed a supporting affidavit and an answer to the complaint. However, the circuit court denied the motion on June 8, 1998. The following day, Summit filed a motion for relief from the judgment, pursuant to Rule 60(b), Ala. R. Civ.P.
On July 16, 1998, Summit filed a notice of appeal from the June 8, 1998, denial of its Rule 55(c) motion to set aside the default judgment. On December 8, 1998, the trial court heard argument on Summit's Rule 60(b) motion for relief from the judgment, and on March 5, 1999, it entered an order denying that motion. On April 16, 1999, Summit filed a notice of appeal from the order denying the Rule 60(b) motion.

*959 Case No. 1971819: The Appeal from the Denial of the Rule 55(c) Motion

A. Standard of Review

On an appeal from an order denying a motion to set aside a default judgment, our review is confined to determining whether the trial court abused its discretion in refusing to set aside the default judgment. Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600, 603 (Ala.1988).
When considering a motion to set aside a default judgment, a trial court has broad discretion. Kirtland, 524 So.2d at 604. However, that discretion requires the trial court to balance two competing policy interests associated with default judgments: judicial economy and a litigant's right to defend on the merits. 524 So.2d at 604. These interests must be balanced under the process established in Kirtland.
In Ex parte Gilliam, 720 So.2d 902, 905 (Ala.1998), this Court summarized the requirements of Kirtland:
"The Kirtland rule mandates that we begin with the presumption that [a court should decide a case on the merits] whenever it is practicable to do so. [Kirtland, 524 So.2d at 604.] This presumption exists because the right to have a trial on the merits outweighs the need for judicial economy. Id. Second, the trial court must apply a three-factor analysis in deciding whether to grant a motion to set aside a default judgment. These factors are `(1) whether the defendant has a meritorious defense; (2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and (3) whether the default judgment was a result of the defendant's own culpable conduct.' Id. at 605."

B. The Three-part Analysis

Summit first contends that the trial court abused its discretion when it found that Summit was unable to demonstrate a meritorious defense.
In order to demonstrate a meritorious defense, Summit "need not satisfy the trial court that [Summit] would necessarily prevail at a trial on the merits, only that [it] is prepared to present a plausible defense." Ex parte Illinois Cent. Gulf R.R., 514 So.2d 1283, 1288 (Ala.1987). A "plausible defense" is "a viable legal theory supported by a factual basis." Kirtland, 524 So.2d at 605. "The rationale behind the meritorious-defense requirement is that evidence of a defense indicates that the outcome of the case could be different if it were disposed of by a trial on the merits rather than by a default judgment and, therefore, justifies reopening the case so that justice can be done." Kirtland, 524 So.2d at 605-06.
Summit submitted an affidavit in support of its motion to set aside the default judgment. Brad Highum, president of Summit, provided that affidavit. The contents of that affidavit were in direct conflict with the allegations in Scott's complaint. Specifically, Highum stated:
"6. According to Summit's records, the plaintiff did purchase approximately three thousand dollars ($3,000.00) of inventory and promotional materials from the defendant in February of 1997. At the times referenced in the plaintiff's complaint from February of 1997 until June 6, 1997, the company filled orders submitted and had every intention of continuing to fill orders placed by all distributors and customers, including the plaintiff and/or his customers, and to continue the business indefinitely. Upon determination early in June of 1997, that the company could not continue in business, operations were ceased immediately and the company made efforts to the best of its limited ability to notify its distributors of same and to return orders and receipts in its possession. *960 At no time were any representations made to the plaintiff by the defendant or any of its agents or employees concerning any material facts which were known to be false.
"7. The money paid to the defendant when orders were placed was a shipping and handling fee. Summit subsequently refunded money it had received for shipping and handling directly to people who had placed orders and paid for them, but never received the product."
Moreover, in its answer to Scott's complaint, Summit averred that no contractual relationship had existed between it and Scott. The answer further stated that, even if such a relationship had existed, Summit did not breach any contract between it and Scott. Highum's affidavit set forth evidence indicating that, under the facts and circumstances of the case, Summit owed Scott no duty other than a possible contractual duty; this evidence contradicted Scott's claims alleging negligence and wantonness. Highum's affidavit also stated that Summit had refunded moneys received as shipping and handling fees, directly to the persons who had placed orders with the company; this evidence contradicted Scott's claims alleging conversion.
It appears from Summit's motion and Highum's affidavit that Summit is prepared to present a plausible defense to Scott's claims. Furthermore, it is evident from the affidavit that Summit has taken a defensible position with regard to the claims made against it. Through Highum's affidavit, Summit has specifically refuted Scott's claims; therefore, Summit has made a showing that it could present a meritorious defense. See Kirtland, 524 So.2d at 605-06.
Summit next contends that the trial court abused its discretion when it found that Summit had failed to show that Scott would suffer no substantial prejudice if the default judgment were set aside.
"[M]ere delay or increased cost is not sufficient to justify a refusal to set aside a default judgment." Ex parte Gilliam, 720 So.2d at 906; see also Cunningham v. Gibson, 618 So.2d 1342, 1344 (Ala.1993). Moreover, more than mere allegations and conclusory statements is required in order to establish substantial prejudice. See Hall v. Chrysler Corp., 553 So.2d 98, 100 (Ala.1989).
The record contains no evidence indicating Scott would suffer any prejudice from setting aside the default judgment other than a delay in collecting damages. If the judgment is set aside but, ultimately, Scott is determined to be entitled to damages from Summit, the delay in collecting damages can be compensated for by imposing costs on Summit. The record contains no evidence of fraud, collusion, or loss of evidence that would substantially harm Scott. See Kirtland, 524 So.2d at 609. Thus, it appears that no prejudice would result from setting aside the default judgment.
Summit also contends that the trial court abused its discretion when it found that Summit's failure to answer Scott's complaint was the result of its own culpable conduct.
"Conduct committed willfully or in bad faith constitutes culpable conduct for purposes of determining whether a default judgment should be set aside. Negligence by itself is insufficient." Kirtland, 524 So.2d at 607. "Willful and bad faith conduct is conduct characterized by incessant and flagrant disrespect for court rules, deliberate and knowing disregard for judicial authority, or intentional nonresponsiveness." 524 So.2d at 608. Finally, "a defaulting party's reasonable explanation for inaction and noncompliance may preclude a finding of culpability." 524 So.2d at 608.
In the affidavit offered in support of Summit's motion to set aside the default judgment, Highum asserted that the company had failed to answer Scott's complaint *961 because it received that complaint after it had ceased doing business. Consequently, he said, the complaint was misplaced and overlooked. Highum's affidavit stated that Summit had operated with 130 employees, but that after it ceased operations it had no employees. This fact, he said, coupled with the fact that Summit had an inadequate process for receiving, processing, and distributing the large amount of mail it received after its dissolution led to its misplacing the complaint.
This Court has held that where a complaint is misplaced because of "inadvertence, mistake, or excusable neglect," the defaulting party does not commit a culpable action. Bailey Mortgage Co. v. Gobble-Fite Lumber Co., 565 So.2d 138 (Ala. 1990). Summit's actions, as indicated by Highum's affidavit, while negligent, do not rise to the level of the culpable conduct necessary to justify the denial of a motion to set aside a default judgment.

C. Conclusion

The trial court's judgment awarded Scott twice the amount he had asked for in his application for entry of a default judgment, and far in excess of the amount he had actually lost. Utilizing the test set out in Kirtland, we hold that the trial court abused its discretion in not setting aside the default judgment. The order denying the Rule 55(c) motion to set aside the default judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Case No. 1981170: The Appeal from the Denial of the Rule 60(b) Motion
Because in case no. 1971819 we reverse the order denying the Rule 55(c), Ala. R. Civ.P., motion, the appeal from the order denying the Rule 60(b) motion is moot. That appeal is therefore dismissed.
1971819REVERSED AND REMANDED.
1981170DISMISSED AS MOOT.
MADDOX, HOUSTON, COOK, SEE, and LYONS, JJ., concur.
ENGLAND, J., concurs in the result in case no. 1971819 and concurs to dismiss the appeal in case no. 1981170.
JOHNSTONE, J., dissents in case no. 1971819 and concurs in the result in case no. 1981170.
JOHNSTONE, Justice (dissenting in case no. 1971819 and concurring in the result in case no. 1981170).
I respectfully dissent from the decision to reverse the trial court's denial of the defendant's motion to set aside the default judgment. I dissent for two reasons. Each is independently sufficient to affirm the trial court.
The first reason is that the defendant's failure to answer resulted from its own culpable conduct. The excuse the defendant claims for its failure to answer appears in the affidavit of Brad Highum:
"The plaintiff filed his complaint in October of 1997. Summit had been reduced to zero employees from previously committed human resources of more than 130 people. Due to the turmoil and confusion of going out of business, the lack of manpower and no orderly process for receiving, distributing and processing the heavy volume of in-bound mail, the plaintiff's complaint was inadvertently overlooked. Therefore, Summit was unable to answer this lawsuit in a timely manner." (Emphasis added.)
The defendant's reduction of its work force to "zero employees" constituted "intentional nonresponsiveness," which, in turn, constitutes culpable conduct, which defeats a motion to set aside a default judgment. Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600, 607-08 (Ala. 1988). Because the "zero employees" lacked capacity for the cited "turmoil," "confusion," or "orderly process," the defendant's use of these terms to argue the excuse is a make-weight illusion.
On the other hand, if the defendant's "zero employees" representation is false, it *962 is disingenuous. Such disingenuousness allows an inference that the defendant's other assertions are not true.
Noteworthily, this case does not involve a hair-trigger default judgment. The plaintiff allowed the defendant more than three-fold the time allotted to file an answer before the plaintiff moved for a default, and the trial judge allowed another week. Specifically, the plaintiff achieved service on October 28, 1997, and did not file his motion for default until February 2, 1998; and the trial judge did not enter the default judgment until February 9, 1998.
Second, the defendant's proffered defense is, on its face, a pretense that amounts to no defense at all. The defendant's answer, which consists principally of denials and ends with a few utterly conclusory positive averments, is, of course, mere pleading, not proof. The affidavit proffered by the defendant as its proof disintegrates upon examination.
This dissent will discuss all of the defensive sentences in the affidavit, sentence by sentence. The affidavit is the same one already quoted in part above.
"At the times referenced in the plaintiff's complaint from February of 1997 until June 6, 1997, the company filled orders submitted and had every intention of continuing to fill orders placed by all distributors and customers, including the plaintiff and/or his customers, and to continue the business indefinitely." (Emphasis added.)
The sentence does not say the company filled or intended to fill all orders, most orders, or a majority of the orders. For aught that appears in the sentence, the defendant filled and intended to fill only a few of the orders.
"Upon determination early in June of 1997 that the company could not continue in business, operations were ceased immediately and the company made efforts to the best of its limited ability to notify its distributors of same and to return orders and receipts in its possession." (Emphasis added.)
As initially discussed, the company was making these efforts with "zero employees." Further, the sentence does not state that the company was trying to return all orders and receipts or most orders and receipts or even a majority of orders and receipts. For aught that appears in the sentence, the company was trying to return only a few orders and receipts.
"At no time were any representations made to the plaintiff by the defendant or any of its agents or employees concerning any material facts which were known to be false." (Emphasis added.)
This statement is entirely conclusoryso conclusory that it has no probative value. Further, the statement does not deny misrepresenting material facts, but rather denies misrepresenting only material facts which were known to be false. The sentence does not deny negligent or even grossly reckless misrepresentations.
"The money paid to the defendant when orders were placed was a shipping and handling fee. Summit subsequently refunded money it had received for shipping and handling directly to people who had placed orders and paid for them, but never received the product." (Emphasis added.)
This sentence does not say that Summit refunded all the money, or most of the money, or even a majority of the money. For aught that appears, the defendant refunded only a nominal amount of the money. Likewise, the sentence does not say that the refunds went to all people who had placed orders, or most of the people, or even a majority of the peoplejust "to people." For aught that appears, the refunds went to only a few people.

"I do not believe that any conduct of the defendant would justify the imposition of a judgment for five hundred thousand dollars ($500,000.00)." (Emphasis added.)
*963 This concluding sentence in Mr. Highum's affidavit is a mere conclusory statement of his personal belief. It has no substantive force whatsoever.
To succeed on a motion to set aside a default judgment, the defendant must present a plausible defensethat is, "a viable legal theory supported by a factual basis." Ex parte Illinois Cent. Gulf R.R., 514 So.2d 1283, 1288 (Ala.1987). This defendant offers mere bits and pieces of legal theories supported by only the illusion of a factual basis.
For each of the reasons, severally, explained in this dissent, I respectfully submit that we should affirm the order of the trial court denying the defendant's Rule 55(c) motion to set aside the default judgment.
I agree that the appeal in case no. 1981170 is due to be dismissed.