BOLIN, Justice.
 

 This appeal arises out of a legal-malpractice action brought by Lifestar Response of Alabama, Inc. (“Lifestar”), against its defense lawyers and Admiral Insurance Company (“Admiral”) for failing to have a default judgment set aside in the underlying case, the details of which are set out in
 
 Lifestar Response of Alabama, Inc. v. Lemuel,
 
 908 So.2d 207 (Ala.2004).
 

 Underlying Litigation
 

 The facts, as summarized in
 
 Lemuel, supra,
 
 are as follows:
 

 “On November 19, 1998, Lifestar and Care entered into an ‘Asset Purchase
 
 *202
 
 Agreement’ pursuant to which Lifestar purchased all of the assets of Care. Care was in the business of operating a basic and advanced life-support ambulance and medical-transportation service. Lifestar identified itself in the agreement as an Alabama corporation having its principal place of business in Holts-ville, New York, and Care identified itself as an Alabama corporation having its principal place of business at 939 South Perry Street, Montgomery, Alabama 36104. That location was conveyed to Lifestar in the transaction. Other features of the transaction pertinent to the issues in this case were that ‘the corporate name “Care Ambulance Service of Alabama, Inc.” and any derivative thereof in the State of Alabama and East of the Mississippi River and any and all fictitious names used by [Care] and ... telephone numbers and facsimile numbers or pager numbers utilized by [Care]’ were sold to Lifestar, and Care agreed to ‘change its corporate name to a name dissimilar’ and to discontinue using the name Care Ambulance Service in the State of Alabama, except as might be required in order to collect accounts receivable generated before the closing of the asset-purchase transaction. Lawrence Branch, a ‘key employee’ who was ‘in charge of running the day-to-day operation’ of Care, was to stay on as an employee of Lifestar for two years.
 

 “Care ceased business operations and Lifestar assumed the operation of the ambulance service. Lifestar continued to use the tradename ‘Care Ambulance Service,’ advertising itself by that name in the Montgomery area telephone directory, also using the shorter trade-name, ‘Care Ambulance.’
 

 “On November 8, 2000, Darnell Eugene Lemuel became ill at his home in Montgomery. His wife, Mildred Lemuel, and their daughter, Naquita McDonald, were with him. Late that night Ms. McDonald telephoned emergency ’911’ and within two or three minutes two employees of ‘Care Ambulance’ arrived. The circumstances of what they did, or omitted to do, on that occasion will be discussed later in this opinion; eventually they transported Mr. Lemuel to Baptist Medical Center South. His condition was critical when he arrived at the hospital, and he was pronounced dead at that facility on November 10.
 

 “On November 7, 2002, Ms. Lemuel, both as the administratrix of Mr. Lemuel’s estate and in her own right, sued ‘Care Ambulance Service of Alabama, Inc.’ and the two employees who had attended to Mr. Lemuel, designated by the fictitious names ‘ABC’ and ‘DEF.’ The complaint alleged that Care, ‘a corporation registered in the State of Alabama with principal place of business at 939 South Perry Street in Montgomery, Alabama,’ had been contacted after Mr. Lemuel had ‘passed out’ in his house and that, although the responding employees were informed that he was on medication for high blood pressure and diabetes and observed that he was drifting in and out of consciousness, they ‘made no effort to provide appropriate life support measures.’ The complaint charged that the two employees breached their duty to provide emergency medical treatment in various specified respects and that Care had failed to employ and dispatch properly qualified personnel. The summons directed service on Care at its South Perry Street address, to Branch’s attention. Deputy Glenn Man-nich of the Montgomery Sheriffs Department delivered the summons and complaint to the Perry Street address on January 7, 2003, and Karen Robertson, employed by Lifestar as its human
 
 *203
 
 resource manager, accepted the service and signed Deputy Mannich’s ‘service log.’ At the hearing conducted on July 22, 2003, on Lifestar’s motion to set aside the default judgment, Deputy Mannich testified that he had served ‘eight or ten papers’ on Care Ambulance Service at the Perry Street address during the preceding four years and that Robertson was ‘one of the people that does accept the papers for the company.’ He confirmed that she had previously signed for the papers on behalf of ‘Care Ambulance Service of Alabama, Inc.’
 

 “In an affidavit dated July 16, 2003, in support of Lifestar’s motion to set aside the default judgment and its objection to the plaintiffs motion to amend the judgment, Robertson stated that she had no personal recollection of the delivery of the summons and complaint but stated:
 

 “ ‘If I was personally delivered a copy of the Summons and Complaint in the Lemuel lawsuit, I would not have read the Complaint, nor noted the identity of the person or company being served. I would have given the Complaint to Vanessa Hill, our billing clerk, to forward to the home office of Lifestar along with other business documents usually transmitted to our home office.’
 

 “Lifestar has not undertaken to account otherwise for the disposition of the summons and complaint, although its attorney acknowledged at the July 22 hearing: ‘I’m not going to say the ball didn’t get dropped here as far as wherever this suit went,’ and Lifestar states in its principal brief to this Court that ‘[a]s far as can be determined, the Complaint served upon Karen Robertson was transmitted to the home office of Lifes-tar, but from there it is unclear as to its routing.’ (Lifestar’s brief, p. 39.)
 

 “No appearance was filed on behalf of Care, and the plaintiffs attorney, Timothy C. Halstrom, applied for a default judgment. On May 16, 2003, Judge Price signed an order scheduling ‘a hearing on default damages’ for May 28. According to Judge Price’s subsequent order of July 31, 2003, notice of that hearing was issued by the circuit clerk to Care at its Perry Street address. (The order scheduling that hearing bears the notation at its bottom ‘ce: Timothy Halstrom, Esq.; Lawrence S. Branch, Pro Se.’) No one appeared at the May 28 hearing except Halstrom, Ms. Lemuel, McDonald, and Dallas Johnson, an expert witness. Testimony was given by Ms. Lemuel, McDonald, and Johnson, and numerous exhibits were introduced. At the conclusion of the hearing Judge Price entered a default judgment in favor of the plaintiff in the amount of $5,000,000.
 

 “On June 3, 2003, Halstrom received a telephone call from an individual identifying himself as Bob Fraulich, a representative of Lifestar. According to Hal-strom’s representations made to Judge Price without objection at the July 22 hearing on the motion to set aside the default judgment, Fraulich was calling from New York, was aware of the default judgment against Care, and explained that ‘ “Care is not that company. We are Lifestar Response Corporation Alabama, Inc., doing business as Care Ambulance Service. So you have got the wrong one, you can’t collect the judgment.” ’ In its brief to this Court, Lifestar states, ‘Actually what was said by Lifestar’s representative was the Default Judgment was taken against the wrong party, not that Lemuel had sued using the “wrong name.” ’ (Lifestar’s brief, p. 9.)
 

 “Based on that information, Halstrom filed a motion, reciting the content of
 
 *204
 
 that telephone conversation and including other information, to amend the judgment to operate against ‘Life Star Response Corp. of Alabama d/b/a Care Ambulance Service.’ Copies of the motion were sent by mail to Fraulich and to ‘Life Star Response Corp. of Alabama d/b/a Care Ambulance Service.’ The motion mailed to Lifestar was duly received at the Perry Street address the following day.
 

 “On June 12 attorney Jack B. Hinton, Jr., entered his notice of appearance on behalf of Care. The following day Hal-strom faxed to him a copy of the motion to amend the judgment. Also on that day, Judge Price entered an order setting Halstrom’s motion for hearing on June 26, with copies to Halstrom and Hinton. On June 23, 2003, attorney B[e]rt P. Taylor filed a notice of appearance on behalf of ‘Lifestar Response of ■Alabama, Inc., d/b/a Care Ambulance Service,’ and a motion seeking a continuance of the June 26 hearing on the basis that he and his client ‘just recently learned’ of the default judgment and the motion to amend. On June 24 Taylor filed a ‘corrected motion to continue hearing,’ reidentilying his client as ‘Lifestar Response of Alabama, Inc., d/b/a Care Ambulance,’ combining ‘Life’ and ‘Star’ in the name of the corporate entity and dropping ‘Service’ at the end of its tradename. Halstrom filed an amendment to his motion, asking that the defendant be redesignated as ‘Lifes-tar Response of Alabama, Inc., d/b/a Care Ambulance Service.’ Judge Price rescheduled the hearing on all pending motions for July 14; that hearing was ultimately conducted on July 22.
 

 “On July 18, 2003, Care filed a motion to set aside the default judgment pursuant to Rule 55(c), Ala. R. Civ. P., and Rule 60(b)(1), (4), and (6), Ala. R. Civ. P.; on that same day, Lifestar filed its ‘objection to plaintiffs motion to amend judgment and motion to set aside default judgment.’ Care asserted in its motion that Lifestar had faxed to it on May 29 a copy of Judge Price’s May 16 order setting the hearing on damages for May 28 and that, upon receiving that order, Care had faxed a copy of it to its legal counsel in California. Care alleged that it had a meritorious defense because, among other things, ‘it was not the entity involved in the alleged medical malpractice made the subject of this suit.’ Care asserted that no unfair prejudice would result to the plaintiff if the default judgment was set aside and disclaimed any culpable conduct on its part, pointing out that its corporate name had been sold to Lifestar and that ‘[t]he first information made available to the
 
 former
 
 “Care Ambulance Service of Alabama, Inc.,” was at or around the time of the hearing on the default judgment.’ Claiming alternatively that the default judgment was void as to it because of lack of service, Care attached the affidavit of Branch, who attested that Care had not operated any ambulance companies after the sale of the service to Lifestar and that he was not at the Perry Street address on the date the summons and complaint were served, being then at his residence in Desert Hot Springs, California. He stated that he had not authorized Robertson to accept any service on his behalf.
 

 “Lifestar asserted in its motion that its employees rendered no medical treatment to Mr. Lemuel because ‘Montgomery Fire Department Medics were on the scene at the time of arrival by the Lifestar ambulance and provided all medical care during transport in connection with medical personnel on staff at the hospital.’ Lifestar argued that the default judgment was void because
 
 *205
 
 Robertson was not authorized to accept service on behalf of
 
 Care.
 
 In its only reference to Rule 55(c), Ala. R. Civ. P., Lifestar argued that the default judgment was due to be set aside because:
 

 “ ‘Care Ambulance Service of Alabama, Inc., was not the entity performing the acts made the basis of Plaintiffs Complaint and, therefore, cannot be held legally accountable for said alleged wrongful conduct. The ambulance transportation provided plaintiffs decedent was through Lifes-tar not the named defendant. The named defendant has a very meritorious defense to the Plaintiffs claims. To enforce a default judgment against Care Ambulance would be manifestly unjust.’
 

 “Lifestar contended that the judgment could not be amended as the plaintiff was requesting because ‘Care Ambulance Service of Alabama, Inc., is not a tradename being used by Lifestar.’ Lifestar argued that the plaintiff had not sued a tradename but, rather, ‘[t]he face of the Complaint clearly reflects suit against an existing Alabama corporation and does not designate the nature of the suit as being related to a Complaint against the entity doing business as “Care Ambulance.” ’ As evidentiary support, Lifestar annexed the affidavits of Robertson and Keith Bryan, its regional vice president.
 

 “Concerning the incident involving Mr. Lemuel, Bryan’s affidavit states:
 

 “ T have reviewed the records of Lifestar and determined Darnell Lemuel was transported by a Lifestar ambulance on November 8, 2000, from his residence at 3345 S. Perry Street, to [Baptist Medical Centerj-South. Attached is the Statistical Data Report, Baptist Health Admissions Fact Sheet, and Run Report signed by the Lifestar employees making the run. The Lifestar employees did not render EMT medical services to Mr. Lemuel. The Montgomery Fire Department Fire Medics were on the scene at the time of arrival, accompanied Mr. Lemuel in the transport to the hospital, and provided all medical treatment to the patient in conjunction with medical personnel at the hospital with whom they were in contact.
 

 “ ‘Pursuant to Ordinance 25-98, City of Montgomery, Montgomery Fire Department Fire Medics are in charge at the scene in all matters concerning patient care and patient transport. The protocol requires an ambulance crew to work under the direction of the officer or fire medic in command of a scene where care is being provided by fire department personnel. This protocol was followed by the Lifestar ambulance crew in connection with the transport of Mr. Lemuel.
 

 “ ‘The Lifestar ambulance crew did not perform the medical care criticized by the Plaintiff in the Lemuel lawsuit described above, which is alleged to have caused the death of Mr. Lemuel on November 10, 2000, two days following his transport to the hospital by the Lifestar ambulance.’
 

 “The referenced ‘Statistical Data Report, Baptist Health Admissions Fact Sheet, and Run Report’ have been closely examined, and none contain any express reference to the presence on the scene of any Montgomery Fire Department personnel.
 

 “On July 22, 2003, Judge Price conducted a hearing on all pending motions. Halstrom, Hinton, and Taylor were present. The only witness called was Deputy Mannich. Hinton argued on be
 
 *206
 
 half of Care that it existed only ‘as a shell’ after it sold its entire business to Lifestar ‘lock, stock, and barrel.’ He acknowledged that by the time the Lemuel action was filed, Branch had relocated to California and Care had not thereafter maintained in Alabama a registered office or a resident registered agent for service, as required by § 10-2B-5.01, Ala.Code 1975. Hinton argued that Care had a meritorious defense inasmuch as it had not been involved in any way in the response to the Lemuel home.
 

 “Taylor argued that because Care Ambulance Service of Alabama, Inc., was nonetheless ‘still a valid entity’ the summons and complaint directed to it was ineffectual as service on or notice to Lifestar. Taylor argued that although Lifestar had been the entity that did respond to the emergency call for medical assistance at the Lemuel residence, it had not provided any medical care to Mr. Lemuel. Taylor asserted:
 

 “ ‘[T]he care that was provided to Mr. Lemuel, whatever that care may have been, was provided by the Montgomery Fire Department medic department. They were on the scene. They’re the ones that called us. They’re the ones that rode in the ambulance with the patient to the hospital. They’re the ones by ordinance that have exclusive control and jurisdiction over the situation.’
 

 “Judge Price responded to that argument to point out that the testimony at the May 28, 2003, hearing had been to the contrary, prompting Taylor to insist ‘[b]ut they are wrong — that is what I am saying.’ When Judge Price noted that Lifestar had had the opportunity to appear at the May 28 hearing and present its defense, Taylor insisted ‘[b]ut we weren’t sued. And we weren’t put on notice, which is the whole point.’
 

 “Concerning his motion to amend the judgment, Halstrom argued that ‘Care Ambulance Service’ was a tradename under which Lifestar operated and that, under all the circumstances, the judgment against Care Ambulance Service of Alabama, Inc., should be recognized as a judgment against Lifestar. He relied on
 
 Ex parte CTF Hotel Management Corp.,
 
 719 So.2d 205 (Ala.1998), as his principal authority. Taylor responded that the defendant in
 
 Ex parte CTF
 
 was designated by a tradename under which the entity served with process did business, whereas here Lifestar had ‘never done business as Care Ambulance Service of Alabama, Inc.’ Taylor argued that the whole purpose of service is ‘notice’ and that because Lifestar was not properly named it was not ‘put on notice.’
 

 “Halstrom pointed out that the complaint clearly described the particular ambulance service involved in the incident and that Lifestar would have known from that description that it had provided that service. Halstrom proved that in an action filed in the Montgomery Circuit Court five months before the Lemuel action, the name of the defendant served had been identical to the name of the defendant served in this case, and Lifestar had answered the complaint, acknowledging that it was in fact the entity being sued. Specifically, in that other action another wrongful-death claim was brought against ‘Care Ambulance Service of Alabama, Inc.,’ and the summons directed service on Branch at the Perry Street address. Service by certified mail was effected on Vanessa Hill at that address. On July 10, 2002, Lifestar filed an answer, introduced by the statement: ‘Comes now the Defendant, Life Star Response Corp. of Alabama, d/b/a Care Ambulance Service (incorrectly designated as
 
 *207
 
 Care Ambulance Service of Alabama, Inc. in plaintiffs Complaint) .... ’
 

 “In his order of July 31, 2003, Judge Price summarized the testimony he had heard at the July 22 hearing on damages, reviewed the pertinent procedural events of the case, and held that it should have been apparent to the on-site personnel of Lifestar upon receipt of the summons and complaint in the Lemuel action that the complaint ‘stated a claim for damages against the entity doing business under the name “Care Ambulance Service” based on the alleged wrongful acts of the employees of “Lifestar.” ’ He stated that Lifestar was aware of its obligation to answer the complaint designating the wrongdoer as Care Ambulance Service of Alabama, Inc., as evidenced by the answer it filed in a prior action and the fact that it operated under the tradename ‘Care Ambulance Service.’ Judge Price concluded that Lifestar had received actual notice of a claim against it asserting negligence of its employees and simply ‘took a calculated risk in not appearing to defend.’ Judge Price expressed his opinion that the default was the result of culpable conduct by Lifestar, pointing out that Lifestar had misrepresented itself to the courts in Montgomery County by names other than its true legal name. He denied the motions to set aside the default judgment and granted the motion to amend it, directing the court clerk to substitute ‘Lifestar Response of Alabama, Inc., d/b/a Care Ambulance Service’ for ‘Care Ambulance Service, Alabama, Inc.’ in the default judgment.
 

 “Care has not appealed from Judge Price’s order. Lifestar appeals, asserting (1) that the default judgment was void because service of process was insufficient as to both it and Care; (2) that if the judgment was not void, it should have been set aside; (3) that if the judgment was not void and not otherwise due to be set aside, it was error for Judge Price to substitute Lifestar as the judgment debtor; and (4) that the $5,000,000 default judgment was excessive.”
 

 908 So.2d at 209-14.
 

 On December 3, 2004, this Court held that Lifestar did not show that it was entitled to have the default judgment set aside as void for lack of jurisdiction because the purpose of service is to notify the defendant of the action being brought against the defendant and Lifestar was served with notice under its tradename, through one of its local employees; Lifes-tar never argued that the employee was not authorized to accept service; and Lifestar had answered complaints in other unrelated actions against it under its tradename. Additionally, we held that Lifestar was not entitled to have the default judgment set aside because Lifestar presented an unsupported assertion that its employees merely provided transportation and that other parties were negligent in the care of Mr. Lemuel; Lifestar never asserted that the plaintiff would not be unfairly prejudiced by setting aside the default judgment; and Lifestar failed to provide a reasonable explanation for its failure to timely respond to the complaint. Last, we held that Lifestar was not entitled to appellate review of the punitive-damages award because Lifestar never sought a hearing on the issue of damages or raised that issue in the trial court. Ultimately, Lifestar settled the Lemuel action for $2,000,000 as satisfaction for the default judgment.
 

 Related Litigation
 

 After the default judgment was entered in her favor, Mildred Lemuel filed a garnishment action in state court, claiming that Admiral, as Lifestar’s primary insurer, was liable for a portion of the
 
 *208
 
 $5,000,000 default judgment against Lifes-tar. Markel American Insurance Company (“Markel”) was Lifestar’s excess-insurance carrier.
 

 Admiral responded to Lemuel’s garnishment action by removing the action to the United States District Court for the Middle District of Alabama and by filing a declaratory-judgment action in the federal court, seeking a judgment declaring that it was not liable for the default judgment. See
 
 Lemuel v. Admiral Ins. Co.,
 
 CV-03-1101, and
 
 Admiral Ins. Co. v. Lemuel,
 
 CV-03-D-1102-N. In its declaratory-judgment action, Admiral argued that, contrary to the terms of its policy with Lifes-tar, Lifestar failed to notify it of Mildred Lemuel’s action until after the default judgment had been entered and that, because of the delay in notice, Admiral was not required to pay any portion of the default judgment. Markel, which did not receive notice of the Lemuel action until almost a year after Admiral, also filed a declaratory-judgment action in federal court seeking a declaration that Lifestar’s untimely notice constitutes a breach of the notice provision of its policy with Lifestar. See
 
 Markel American Ins. Co. v. Lifestar Response of Alabama, Inc., d/b/a Care Ambulance,
 
 CV04-D-942-N. The federal district court consolidated the three cases.
 

 On January 23, 2006, the federal district court concluded that the default judgment was not covered under the applicable insurance policies and granted the summary-judgment motions filed by Admiral and Markel.
 
 Lemuel v. Admiral Ins. Co.,
 
 414 F.Supp.2d 1037 (M.D.Ala.2006). In its opinion, the court defined the substantive issue as whether Lifestar gave timely notice of Lemuel’s claims and legal action to Admiral and Markel, in light of the express conditions in the policies that the insured give notice “ ‘as soon as practicable/possible’ and [that it] forward suit ‘papers immediately.’ ” 414 F.Supp.2d at 1048. The first issue addressed by the court was a choice-of-law question. Lemuel and Lifestar contended that the parties to the Admiral policy contractually agreed that New York law would govern. Alternatively, they argued that Alabama’s application of the principle of
 
 lex loci contrac-tus
 
 would yield the same result — i.e., New York law would govern — because the insurance contract was issued and delivered in New York. Admiral contended that an equally valid argument could be made for applying Alabama law because Lifestar is an Alabama corporation doing business in Alabama or, in the alternative, an exception to the principle of
 
 lex loci contractus
 
 applies because performance and coverage of the policy was to occur in Alabama. The federal district court concluded that there was no conflict between New York law and Alabama law as to the issues disputed and that when there is no conflict the court did not have to determine which state’s law governed. The court determined that under the law of both states when an insurance policy contains as a condition precedent to coverage that the insured provide prompt notice of a claim or an action, the insured must comply with that condition in a timely manner and that, absent a valid reason for the untimely delay, the notice is deemed unreasonable.
 

 The federal district court stated that the date Lifestar had actual notice of the Lemuel action was a pivotal factual issue in determining whether Lifestar timely notified Admiral and Markel of the Lemuel action. Admiral asserted that Lifestar, as a party in the state court proceedings, was barred by the doctrines of collateral estop-pel and/or res judicata from relitigating the findings of the state court as to the date Lifestar received notice of the litigation in the' Lemuel action. According to Admiral, because this Court affirmed the Montgomery Circuit Court’s judgment,
 
 *209
 
 which was based, in part, on a finding that Lifestar received actual notice of Lemuel’s complaint on January 7, 2003, the federal district court was bound by that finding, and Lifestar could not relitigate the issue in the federal proceedings. Lifestar argued that neither collateral estoppel nor res judicata precluded it from demonstrating when it actually received notice that Lemuel’s complaint was filed against Lifestar.
 

 The federal district court stated that it was bound by 28 U.S.C. § 1738, the full-faith-and-credit doctrine, to give a state court judgment the same preclusive effect that would be given the judgment under the law of the state in which the judgment was entered. The court determined that under Alabama law the doctrine of collateral estoppel did not apply. However, the court held that the doctrine of res judicata did apply and that Lifestar was bound by the state court’s finding as set out in
 
 Lifestar Response of Alabama, Inc. v. Lemuel, supra,
 
 that Lifestar received notice of the Lemuel action on January 7, 2003. The federal district court further held that because Lifestar was notified of the Lemuel action on January 7, 2003, and because it did not notify Admiral until June 3, 2003, nearly 5 months after it received notice, Lifestar had failed to timely notify Admiral under the terms of the insurance policy. Similarly, Markel was not timely notified because Lifestar did not notify it of the Lemuel action until May 12, 2004.
 

 Lifestar appealed the federal district court’s decision to the United States Court of Appeals for the Eleventh Circuit. While the appeal was pending, Lifestar settled its claim against Markel for $25,000. On January 9, 2007, the Eleventh Circuit affirmed the federal district court’s summary judgment for Admiral and Mark-el.
 
 Lemuel v. Lifestar Response of Alabama, Inc.,
 
 (No. 06-11155, Jan. 9, 2007, 11th Cir.2007) (not selected for publication in the Federal Reporter).
 

 In 2005, Lifestar sued, in Bergen County, New Jersey, its insurance agent, Capacity Coverage Company of New Jersey, Inc., for failing to give the insurance carriers timely notice of the Lemuel action. See
 
 Lifestar Response of Alabama, Inc. d/b/a Care Ambulance v. Capacity Coverage Co. of New Jersey, Inc.,
 
 CV-3951-05. Ultimately, that case was settled for $100,000.
 

 Current Litigation
 

 On June 2, 2005, Lifestar sued its defense attorneys, Bert P. Taylor and Taylor & Smith, P.C. (“the Taylor defendants”), and Admiral in the Montgomery Circuit Court. Lifestar alleged that Admiral had a duty to defend Lifestar in any action against it and that Admiral had engaged the Taylor defendants as Admiral’s agent to defend Lifestar in accordance with its insurance policy and that the Taylor defendants represented both Lifestar and Admiral in a tripartite relationship and had failed to exercise ordinary diligence in their representation. Lifestar alleged that Admiral breached its contract of insurance with Lifestar by providing a defense that was below the appropriate standard. Additionally, Lifestar alleged that Admiral acted in bad faith in its failure to effectively defend Lifestar. Lifestar also alleged that the Taylor defendants were Admiral’s agents and that as agents of Lifestar the Taylor defendants’ negligence and/or wantonness should be imputed to Admiral. Lifestar sued the Taylor defendants under the Alabama Legal Services Liability Act, § 6-5-270 et seq., Ala.Code 1975.
 

 On September 25, 2005, Admiral moved to dismiss the complaint. Admiral stated that, after the default judgment was entered in the Lemuel action, the Taylor defendants were retained to defend Lifes-
 
 *210
 
 tar against the judgment or to attempt to get the default judgment set aside. Admiral asked the trial court to take judicial notice of the underlying litigation in the Lemuel action and the related litigation in the federal courts. Admiral stated that Lifestar had asserted in the federal litigation that New York law, rather than Alabama law, governed Admiral’s insurance policy with Lifestar. As a ground for granting its motion to dismiss, Admiral argued that under New York law an insurance company cannot be held vicariously liable for malpractice committed by counsel it retained to defend its insured. Admiral further argued that although no Alabama court has addressed the issue, the result would be the same under Alabama law because, it argued, attorneys in Alabama are prohibited by the Alabama Rules of Professional Conduct from allowing an insurer to interfere with the attorney’s independence of professional judgment in representing the insured and because insurance companies are forbidden from practicing law. Admiral also argued that under Alabama law a retained attorney is in essence an independent contractor in relation to the person who retained the attorney. As another ground to grant the motion to dismiss, Admiral argued that Lifestar’s bad-faith claim should have been raised in the federal court litigation as a compulsory counterclaim.
 

 Admiral attached numerous exhibits to its motion to dismiss involving the federal court and state court litigation, including the insurance policy and a letter dated June 19, 2003, from Admiral acknowledging receipt of the notice of the Lemuel action from Lifestar on June 3, 2003, noting that Lifestar had retained the Taylor defendants and that Admiral had reserved its right to disclaim coverage or to provide a defense.
 

 In response to Admiral’s motion to dismiss, Lifestar argued, among other things, that Admiral’s duty to provide a defense did not arise under the insurance contract alone because Admiral had assumed the duty to provide a defense to Lifestar (even though it reserved its right to disclaim coverage or to provide a defense) and it had done so in a negligent manner. Lifes-tar also argued that there was a factual issue as to whether Admiral or Lifestar had hired the Taylor defendants and that a lawyer is an agent of the insurance company when the lawyer is hired to defend a lawsuit against the company’s insured.
 

 In support of its response, Lifestar attached an affidavit from Bert Taylor that had been filed in the federal court litigation in support of Bert Taylor’s motion to withdraw as Lifestar’s attorney because of a conflict. In the affidavit, Taylor stated that he was on a list of “panel counsel” for Admiral and that in early June 2003 Bob Froelieh,
 
 [1]
 
 Lifestar’s risk manager, had contacted him about representing Lifestar in the Lemuel action. Taylor stated that he investigated the default judgment and that he spoke with Froelieh on June 16, 2003, and discussed with Froelieh reporting the claim to Admiral. Taylor states that he sent invoices to Admiral for services rendered to Lifestar because Admiral was providing a defense to Lifestar. Taylor also stated that he sent two reports to Admiral regarding the Lemuel action.
 

 Admiral’s motion to dismiss was argued on October 31, 2005, and continued until August 28, 2006, at which time the trial court denied the motion and ordered that Bert Taylor be deposed. After Taylor’s
 
 *211
 
 deposition was taken, Lifestar amended its complaint, adding additional negligence and wantonness claims against Admiral, asserting that Admiral was negligent and/or wanton in the manner in which it supported and supervised the Taylor defendants as Admiral’s “panel counsel.”
 
 [2]
 
 Lifestar also asserted that Admiral was negligent and/or wanton in investigating the Lemuel action and in the manner in which it failed to challenge the excessiveness of the default judgment.
 

 On October 13, 2006, Admiral filed a renewed motion to dismiss, arguing that there exists no cause of action against an insurance company for the alleged legal malpractice of retained defense counsel and that Admiral is not a legal-services provider under the Alabama Legal Services Liability Act. Admiral argued that Lifestar’s action was barred by the doctrine of “judgmental immunity” or the “attorney-judgment rule” and that the claims asserted in Lifestar’s amended complaint should be dismissed on the same grounds as the claims in Lifestar’s original complaint. Admiral adopted and incorporated its original motion to dismiss and its supplemental material filed in support of the original motion. Admiral also submitted a brief in support of its renewed motion to dismiss. In its brief, Admiral asserted that the testimony from Bert Taylor’s deposition indicated that the Taylor defendants did not breach the standard of care and, furthermore, that Admiral did not participate in or direct Lifestar’s defense. Admiral quoted from Taylor’s deposition in its brief in support of the motion to dismiss and attached to its brief a copy of Taylor’s deposition.
 

 In his deposition, Taylor stated that he had been contacted by Lifestar’s corporate risk manager, Froelich, and asked to represent Lifestar in the Lemuel action; that he had not been hired or assigned by Admiral to represent Lifestar; and that Admiral had merely approved Lifestar’s selection of Taylor as a defense attorney and ultimately paid Taylor’s defense bill once the federal litigation began. Taylor said that, at Admiral’s request, he had previously represented Lifestar in another lawsuit involving Care Ambulance and that he had been privately retained by Lifestar at various times to work on other lawsuits that did not involve Admiral. According to Taylor, Froelich told Taylor that he would contact Admiral and get permission for Taylor to represent Lifestar in the Lemuel action. He also stated that Admiral did not control, direct, or have any input into his defense of Lifestar in the Lemuel action and that Lifestar’s corporate officers and attorneys supervised and directed Lifestar’s defense.
 

 On November 29, 2006, Lifestar filed a response to Admiral’s renewed motion to dismiss. Lifestar asserted that Admiral had included facts outside the pleadings in an effort to prove that the Taylor defendants were merely exercising attorney judgment or engaging in litigation strategy. Lifestar went on to set out a time line of Bert Taylor’s actions in the Lemuel action and to cite to and quote from Bert Taylor’s deposition in arguing that the Taylor defendants’ actions fell below the appropriate standard. Lifestar also referred to another civil action in Alabama in which Bert Taylor had been hired by Admiral to defend Lifestar. Lifestar argued that when an insurance company is defending its insured under a reservation of rights, its duty to its insured is a heightened one. Lifestar asserted that Taylor
 
 *212
 
 originally stated that he was hired by Admiral to defend Lifestar but that he now claims that he was not hired by Admiral and that Admiral disavowed hiring Taylor. Lifestar further argued that because Admiral now states that it did nothing to defend Lifestar, Lifestar is entitled to a judgment against Admiral based on its failure to do anything in defense of its insured.
 

 After a hearing on Admiral’s renewed motion, the trial court granted the motion on January 17, 2007, and certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Lifestar appealed.
 

 Analysis
 

 In its brief to this Court, Lifestar states that its bad-faith-failure-to-defend claim and breach-of-contract claim are no longer actionable because of the federal court’s determination in
 
 Lemuel v. Admiral Insurance Co., supra,
 
 that Admiral did not have a duty to provide Lifestar with a defense to the Lemuel action in state court. Lifestar states that only its negligence and wantonness claims against Admiral “for its failure to provide Lifestar a defense to the Lemuel claim” are before this Court. (Lifestar’s brief, p. 6.) Before proceeding to our analysis of the issues raised in this case, we must address the applicable standard of review and the applicable law.
 

 Standard of Review
 

 Lifestar argues that we should apply the standard applicable to this Court’s review of the dismissal of a case for failure to state a claim; Admiral argues that we should apply the standard applicable to this Court’s review of a summary judgment because the trial court considered matters outside the pleadings. Admiral is correct. Rule 12(b), Ala. R. Civ. P., provides:
 

 “If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.”
 

 This Court has stated:
 

 “ ‘When matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment, Rule 12(b), Ala. R. Civ. P.; this is the case regardless of what the motion has been called or how it was treated by the trial court,
 
 Papastefan v. B & L Constr. Co.,
 
 356 So.2d 158 (Ala.1978);
 
 Thorne v. Odom,
 
 349 So.2d 1126 (Ala.1977). “Once matters outside the pleadings are considered, the requirements of Rule 56, [Ala. R. Civ. P.], become operable and the ‘moving party’s burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.’ C. Wright & A. Miller,
 
 Federal Practice & Procedure, Civil,
 
 § 1366 at 681 (1969).”
 
 Boles v. Blackstock,
 
 484 So.2d 1077, 1079 (Ala.1986).’
 

 “Hornsby v. Sessions,
 
 703 So.2d 932, 937-38 (Ala.1997).”
 

 Robinson v. Benton,
 
 842 So.2d 631, 634 (Ala.2002).
 

 In the present case, both sides addressed matters outside the pleadings, including the related litigation and Bert Taylor’s deposition. The trial court did not exclude any of the matters outside the
 
 *213
 
 pleadings, and when matters outside the pleadings are presented to and not excluded by the trial court, the motion will be treated as a summary-judgment motion. Rule 12(b), Ala. R. Civ. P. Additionally, it appears that both sides acquiesced in the trial court’s consideration of matters outside the pleadings either by submitting or by referring to evidence beyond the pleadings; therefore, notice by the trial court that it would consider matters outside the pleadings would not have been necessary under Rule 56, Ala. R. Civ. P.
 
 Cf. Graveman v. Wind Drift Owners’ Ass’n,
 
 607 So.2d 199 (Ala.1992)(nonmovant, like the movant, filed materials in addition to the pleadings). Accordingly, we will review this case under the standard applicable to a summary judgment.
 

 Applicable Law
 

 Alabama law follows the traditional conflict-of-law principles of
 
 lex loci contractus
 
 and
 
 lex loci delicti
 
 See
 
 Liberty Mut. Ins. Co. v. Wheelwright,
 
 851 So.2d 466 (Ala.2002). Under the principles of
 
 lex loci contractus,
 
 a contract is governed by the law of the jurisdiction within which the contract is made.
 
 Cherry, Bekaert & Holland v. Brown,
 
 582 So.2d 502 (Ala.1991).
 
 [3]
 
 Under the principle of
 
 lex loci delicti,
 
 an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.
 
 Fitts v. Minnesota Mining & Mfg. Co.,
 
 581 So.2d 819 (Ala.1991). Lifes-tar’s remaining claims against Admiral are based on negligence and wantonness; therefore, we will apply Alabama law because the alleged injury occurred in Alabama.
 

 Discussion
 

 The first issue is whether Admiral can be held vicariously liable for the alleged negligence of the Taylor defendants.
 

 The test for determining whether a person is an agent or employee of another, rather than an independent contractor, is whether that other person has reserved the right of control over the means and method by which the person’s work will be performed, whether or not the right of control is actually exercised.
 
 Alabama Power Co. v. Beam,
 
 472 So.2d 619 (Ala.1985). Vicarious liability arises from the right of supervision and control over the manner of the alleged agent’s performance.
 
 Kennedy v. Western Sizzlin Corp.,
 
 857 So.2d 71 (Ala.2003). Generally, one is liable for the actions of an agent but is not liable for the actions of an independent contractor.
 
 Gonzalez, LLC v. DiVincenti,
 
 844 So.2d 1196 (Ala.2002).
 

 Lifestar argues that based on
 
 Boyd Brothers Transportation Co. v. Fireman’s Fund Insurance Cos.,
 
 729 F.2d 1407 (11th Cir.1984), an attorney retained by an in
 
 *214
 
 surance company to defend the company’s insured is not an independent contractor and, therefore, that Admiral is responsible for the Taylor defendants’ allegedly negligent and/or wanton defense. In
 
 Boyd Brothers,
 
 the insurance company agreed to represent its insured, an Alabama transportation company, in an action seeking damages as the result of a steel shipment from New York where the transportation company had allegedly caused the steel to rust in transport. The insurance company undertook to defend the action under an agreement that it was not waiving its right to deny coverage or to deny that it had a duty to provide the transportation company a defense. The insurance company assigned the case to a New York attorney and paid for the bulk of the attorney’s services throughout the litigation. The New York Supreme Court entered a summary judgment for the steel supplier and against the transportation company. In response to the summary-judgment motion, the attorney for the transportation company had attached only one item, an affidavit by the transportation company’s president, who had no direct knowledge of any of the facts presented in the affidavit. After the entry of the summary judgment, the insurance company wrote a letter to the transportation company confirming that the judgment had been entered and refusing to defend them further. The transportation company paid for an attorney to represent it on appeal of the summary judgment but lost that appeal. The case eventually went to a New York jury, and damages were assessed against the transportation company. Subsequently, the transportation company sued the insurance company, alleging negligence and wantonness in defending the action. The jury found in favor of the transportation company, and damages were awarded. The insurance company appealed.
 

 On appeal, one of the issues was whether the New York attorney was an agent of the insurance company or an independent contractor. The United States Court of Appeals for the Fifth Circuit first turned to New York law on the question whether an attorney retained and paid by an insurance company to defend an insured is an independent contractor or the insurance company’s agent. However, there were no New York cases on point at that time. The court next looked to Alabama law because of its connection to the case and found no Alabama law on point. The court then looked to Alabama’s neighboring state of Georgia and found a case,
 
 Smoot v. State Farm Mutual Automobile Insurance Co.,
 
 299 F.2d 525 (5th Cir.1962), in which the federal appellate court, interpreting Georgia law, determined that “[tjhose whom the insurer selects to execute its promises, whether attorneys, physicians, no less than company-employed adjusters, are its agents for whom it has the customary legal liability.” 299 F.2d at 530.
 

 Lifestar’s reliance on
 
 Boyd Brothers
 
 is misplaced. First,
 
 Boyd Brothers
 
 did not apply Alabama law; instead, it applied Georgia law, as interpreted by the federal court. Second,
 
 Boyd Brothers
 
 was issued four years before
 
 Feliberty v. Damon,
 
 72 N.Y.2d 112, 531 N.Y.S.2d 778, 527 N.E.2d 261 (1988), in which the New York state court determined that the alleged negligence of defense counsel, whom the insurance company was required to retain to conduct litigation of behalf of the insured, would not be imputed to the insurance company. Had
 
 FelibeHy
 
 been decided when
 
 Boyd Brothers
 
 was before the federal court, the federal court would have followed New York law.
 

 We note that other jurisdictions have held that an insurer is not vicariously liable for the actions of counsel it retained on
 
 *215
 
 behalf of its insured. In
 
 Merritt v. Reserve Insurance Co.,
 
 34 Cal.App.3d 858, 880, 110 Cal.Rptr. 511, 526 (1973), the California court stated that “independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance.” The nature of the duty assumed by the insurer to defend its insured against suits must be considered a delega-ble duty because the insurer had no authority to perform that duty itself and in fact, because an insurance carrier is not authorized to practice law, was prohibited from doing so. “If counsel negligently conducts the litigation, the remedy for this negligence is found in an action against counsel for malpractice and not in a suit against counsel’s employer to impose vicarious liability.” 34 Cal.App.3d at 881—82, 110 Cal.Rptr. at 527. See also
 
 Brown v. Lumbermens Mut. Cas. Co.,
 
 90 N.C.App. 464, 369 S.E.2d 367 (1988) (alleged negligence of attorneys hired by insurer to defend insured could not be imputed to insurer because attorney was an independent contractor);
 
 Aetna Cas. & Sur. Co. v. Protective Nat’l Ins. Co.,
 
 631 So.2d 305 (Fla.Dist.Ct.App.1993)(holding that an insurance company is not vicariously liable for the malpractice of the attorney it retained to defend its insured).
 

 Other jurisdictions have held an insurer vicariously liable for the negligence of counsel retained to defend its insured. See, e.g.,
 
 Pacific Employers Ins. Co. v. P.B. Hoidale Co.,
 
 789 F.Supp. 1117 (D.Kan.1992)(holding that under Kansas law primary insurer was vicariously liable under agency principles because counsel was engaged in the furtherance of the insurer’s business and received instructions from the insurer rather than the insured);
 
 Continental Ins. Co. v. Bayless & Roberts, Inc.,
 
 608 P.2d 281 (Alaska 1980)(expressly declining to follow the
 
 Merritt
 
 court’s rationale).
 

 Lifestar cites
 
 Waters v. American Casualty Co. of Reading, Pa.,
 
 261 Ala. 252, 73 So.2d 524 (1954), for the proposition that an attorney retained by an insurance company to represent an insured is an agent of the insurance company. In
 
 Waters,
 
 this Court held that a liability insurer may be liable beyond the limits of the policy for negligence or bad faith in failing to settle claims against the insured within policy limits when a judgment greater than the policy limits is subsequently obtained against the insured. In
 
 Waters,
 
 the insured sued his insurer, alleging negligence and bad faith, when the jury’s verdict exceeded the policy limits and the insurer had had an opportunity to settle within the policy limits before the verdict was returned. During the trial, the plaintiff offered to settle the case for an amount equal to the policy limits. The defense attorney retained by the insurer to represent the insured did not notify the insurer of the offer. The Court stated that the opinion was addressing the liability of the insurer, and not of the attorney. However, the Court noted that the attorney must exercise ordinary diligence and skill throughout his or her representation and that that requirement imposes a duty on the attorney to inform the insurer of a proposal presented by the plaintiff to settle an action within the limits of the policy. Whether or not the attorney notifies the insurer, the insurer is charged with the same notice the attorney received in the course of the employment the same as if the attorney had in fact so notified the insurer. The Court held that the question of the insurer’s liability was properly left to the jury where the attorney, acting within the line and scope of his employment, was the agent
 
 *216
 
 of his client, the insurer. Although the
 
 Waters
 
 Court imputed the attorney’s knowledge of the settlement offer to the insurer, the “agency” relationship did not extend to control the attorney’s practice of law.
 

 Rule 1.8(f), Ala. R. Prof. Cond., provides:
 

 “A lawyer shall not accept compensation for representing a client from one other than the client unless:
 

 “(1) the client consents after consultation or the lawyer is appointed pursuant to an insurance contract;
 

 “(2) there is no interference with the lawyer’s independence of professional judgment or with the client-lawyer relationship; and
 

 “(3) information relating to representation of a client is protected as required by Rule 1.6.”
 

 The Comment to Rule 1.8 explains:
 

 “Paragraph (f) requires disclosure of the fact that the lawyer’s services are being paid for by a third party.
 
 Subsection (1) in this paragraph expressly recognizes that in the insurance defense practice, attorneys are appointed by the insurers to represent the insureds as clients. The insurer’s authority to appoint counsel springs from its contract with the insured. In the normal insurance defense relationship where, for example, there are no coverage issues, appointed counsel has two clients, the insured and the insurer.
 
 Hence, the insurer is not a third party. Additionally,
 
 all
 
 arrangements pursuant to paragraph (f) must also conform to the requirements of Rule 1.6 concerning confidentiality and Rule 1.7 concerning conflict of interest. Where the client is a class, consent may be obtained on behalf of the class by court-supervised procedure.”
 

 (Emphasis added.)
 

 In
 
 Mitchum v. Hudgens,
 
 533 So.2d 194 (Ala.1988), an obstetrician sued the attorney who had been designated by the insurer to defend the medical-malpractice claim against the obstetrician, alleging that the attorney had committed malpractice by settling the medical-malpractice action within policy limits without giving prior notice of the settlement to the obstetrician. This Court explained:
 

 “It must be emphasized that the relationship between the insured and the attorney is that of attorney and client. That relationship is the same as if the attorney were hired and paid directly by the insured and therefore it imposes upon the attorney the same professional responsibilities that would exist had the attorney been personally retained by the insured. These responsibilities include ethical and fiduciary obligations as well as maintaining the appropriate standard of care in defending the action against the insured.”
 

 533 So.2d at 199.
 

 In its complaint, Lifestar alleges that the Taylor defendants represented both Lifestar and Admiral in a tripartite relationship. In the normal tripartite relationship between an insurer, the insured, and the defense attorney, the insurer has a duty to defend and retains an attorney to provide the defense. So long as the interests of the insurer and the insured coincide, they are both clients of the retained attorney, with the mutual goal of defeating the action against the insured. Two classic conflicts of interest that may arise between the insured and the insurer are where the claimed damages exceed coverage and where the insurer has reserved its right to contest coverage under the policy. “[N]o real conflict of interest exists be
 
 *217
 
 tween the insured and the insurer, at least where the
 
 claim, or settlement is within ;policy limits and there has been no reservation of rights by the insurer.” Mitchum,
 
 533 So.2d at 201 (emphasis added). If a conflict exists, the primary obligation of the retained attorney is to the insured. In the present case, Admiral reserved its right to deny coverage. Thus, the Taylor defendants represented Lifestar, not Admiral.
 

 This Court has addressed a defense attorney’s obligation when the insurer reserves its rights to deny coverage or disclaim its duty to provide a defense. In
 
 L & S Roofing Supply Co. v. St. Paul Fire & Marine Insurance Co.,
 
 521 So.2d 1298 (Ala.1987), this Court answered the certified question posed by a federal district court as to whether an insurer’s election to defend its insured under a reservation of rights creates such a conflict of interest that the insured is entitled to engage counsel of its choice at the insurer’s expense. The insured, L & S Roofing, relied on decisions from “‘[a]t least fifty different courts in a dozen jurisdictions’ ” that have held that the existence of a dispute as to coverage justifies selection of independent counsel by the insured. 521 So.2d at 1302. This Court disagreed and adopted a standard of “enhanced obligation of good faith,” 521 So.2d at 1304, that the insurer and defense counsel retained by it must follow. This Court adopted the enhanced-good-faith standard established by the Washington Supreme Court in
 
 Tank v. State Farm Fire & Casualty Co.,
 
 105 Wash.2d 381, 715 P.2d 1133 (1986), and quoted extensively from that opinion:
 

 “ ‘This enhanced obligation [of good faith] is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured’s accident and the nature and the severity of the plaintiffs injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation of rights defense itself, but of all the developments relevant to his policy coverage and the progress of this lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer’s monetary interest than for the insured’s financial risk.’ ”
 

 521 So.2d at 1303 (quoting
 
 Tank,
 
 105 Wash.2d at 388, 715 P.2d at 1137)(empha-sis omitted). This Court admonished that when an insurer defends its insured under a reservation of rights retained counsel should understand that counsel represents only the insured, not the insurer.
 

 Lifestar is not the first party to sue a third party for an attorney’s alleged malpractice when the third party retained the attorney. In
 
 United Steelworkers of America, AFL-CIO v. Craig,
 
 571 So.2d 1101 (Ala.1990), the union members brought an action against their union alleging legal malpractice. The trial court entered a judgment in favor the union members, and the union appealed. This Court held that
 

 “the duty, if any, on which the [union members’] claims rest, arises solely out of federal labor law .... The fact that the [union members] couched their suit in language indicative of state-law claims does not create a state-law cause of action where, as here, a state-law claim does not otherwise exist. In other words, but for the duty of fair representation implied in the union-employee re
 
 *218
 
 lationship, inherent in federal labor law, no cause of action exists for legal malpractice against a nonlawyer, based on the nonlawyer’s ‘failing to adequately represent the plaintiffs’ in a litigated ‘discrimination’ suit.”
 

 571 So.2d at 1102 (citations omitted).
 

 In
 
 Alabama Education Ass’n v. Nelson,
 
 770 So.2d 1057 (Ala.2000), a former teach-. er brought a legal-malpractice action against her attorney and the teachers organization, the Alabama Education Association (“the AEA”), which had provided the attorney. This Court held that the AEA was not a “legal services provider” under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala.Code 1975, and, therefore, could not be held liable for the alleged malpractice of the attorney it retained to represent the former teacher.
 

 In the present case, the Taylor defendants’ alleged negligence and wantonness could not be imputed to Admiral. Admiral could not control the Taylor defendants’ professional judgment. Rule 1.8(f)(2), Ala. R. Prof. Cond., prevents an attorney from accepting compensation from a third party unless there is no interference with the attorney’s independent judgment. Therefore, the attorney’s ethical obligation to his or her client (here, Lifestar) prevents an insurer from controlling the manner of the attorney’s performance. We also agree with the rationale of the New York court in
 
 Feliberty v. Damon, supra:
 

 “First,
 
 the duty to defend an insured is by its very nature delegable, as all the parties must know from the outset, for in New York — as in California — an insurance company is in fact prohibited from the practice of law. Accordingly, the insurer necessarily must rely on independent counsel to conduct the litigation.
 
 Second,
 
 the paramount interest independent counsel represents is that of the insured, not the insurer. The insurer is precluded from interference with counsel’s independent professional judgments in the conduct of the litigation on behalf of its client. Vicarious liability thus produces an untenable situation here: on the one hand an insurer is prohibited from itself conducting the litigation or controlling the decisions of the insured’s lawyer, yet on the other hand it is charged with responsibility for the lawyer’s day-to-day independent professional judgments in the ‘nuts and bolts’ of representing its client.
 
 Finally,
 
 in determining whether a new exception should be recognized, we note that an insured is not otherwise left without a remedy for a law firm’s claimed incompetence, and a law firm is not insulated from liability for wrongdoing; indeed, in the case before us, plaintiff has sought full recovery for his damages in a legal malpractice claim against the firm.”
 

 72 N.Y.2d at 120, 531 N.Y.S.2d at 782, 527 N.E.2d at 265 (citations omitted). Accordingly, we hold that Admiral cannot be held vicariously liable for the Taylor defendants’ alleged negligence or wantonness.
 

 Lifestar also argues that Admiral is directly liable for the negligent and/or wanton manner in which it supported and supervised the Taylor defendants as Admiral’s panel counsel. Lifestar also argues that Admiral was negligent and/or wanton in investigating the Lemuel action and in the manner in which it failed to challenge the excessiveness of the default judgment.
 

 First, any claim that Lifestar had regarding Admiral’s failure to investigate the underlying action would have fallen under Admiral’s enhanced obligation of good faith as discussed in
 
 L & S Roofing, supra.
 
 In a subsequent case, this Court has held that a claim of a breach of the enhanced obligation of good faith is a breach-of-contract claim. See
 
 Twin City
 
 
 *219
 

 Fire Ins. Co. v. Colonial Life & Accident Ins. Co.,
 
 839 So.2d 614 (Ala.2002). In
 
 Twin City Fire,
 
 this Court stated that after
 
 L & S Roofing,
 
 “whenever an insurer defends the insured under a reservation of rights, the enhanced duty of good faith is read into that reservation of rights.... Because the enhanced duty arises from the contract, it follows that claims alleging a breach of the enhanced duty of good faith are contract claims.” 839 So.2d at 616. Infestar recognizes that any contract claims that it had against Admiral should have been brought in the federal action. Second, as to Lifestar’s claims that Admiral failed to supervise the Taylor defendants, including supervising them in challenging the excessiveness of the award in the Lemuel action, an insurance company is prohibited from practicing law and must rely on independent counsel to conduct litigation. A corporation cannot practice law, and an appearance for a corporation by one not an attorney is not permissible.
 
 A-OK Constr. Co. v. Castle Constr. Co.,
 
 594 So.2d 53 (Ala.1992). Furthermore, the Taylor defendants, as discussed earlier, represented Lifestar’s interests, not Admiral’s.
 

 Based on the foregoing, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
 

 [1]
 

 . This person’s name is also spelled "Fr¡m-lich” throughout the record and in
 
 Lifestar Response of Alabama, Inc. v. Lemuel, supra.
 

 [2]
 

 . Panel counsel is typically a list of lawyers regularly used by insurers to represent their insureds.
 

 [3]
 

 . Alabama law has long recognized the right of parties to an agreement to choose the law of a particular state to govern the agreement. Lifestar contended that it and Admiral agreed in the insurance contract that New York law would apply and that a contractual choice-of-law provision may be broad enough to apply to both contract claims and tort claims in certain circumstances. The policy between Lifestar and Admiral, which was issued in New York, provides that "[t]he terms of this policy which are in conflict with the statutes of the state wherein this contract is issued are hereby amended to conform to such statutes.” However, this language conforming the provisions of the policy with state law does not operate as a choice-of-law provision and should not be treated as such. The plain language of that provision states only that where the policy conflicts with state law the state law will apply to conform the policy to the statute; such language does not indicate an intent by Lifestar and Admiral to apply New York law to the construction and validity of the agreement, much less to any tort claims arising out of the relationship between the parties.