Rel: April 10, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————

### SC-2025-0660
————————————

**Frederick Van Diver**

**v.**

**Anietra Mays**

**Appeal from Montgomery Circuit Court**
**(CV-23-900805)**

McCOOL, Justice.

Frederick Van Diver has appealed from a default judgment entered

against him by the Montgomery Circuit Court.  For the reasons set forth

herein, we affirm the judgment insofar as it imposes liability on Van Diver, but we reverse the award of damages and remand the case to the circuit court for that court to reconsider the damages.

Facts and Procedural History

In June 2023, Anietra Mays filed a complaint against Van Diver; American Benefit, LLC ("American Benefit"); and Mutual of Omaha Insurance Company ("Omaha"). According to the complaint, at all times relevant to this case, Van Diver was an employee of American Benefit, which "was a subsidiary of Omaha." In support of her complaint, Mays alleged that, during the time that she and her husband were in the process of divorcing, Van Diver had assisted her husband in "obtain[ing] life insurance on [her] life without [her] knowledge." Specifically, Mays alleged that Van Diver had "forged [her] signature on the application for life insurance" and that her husband had then purchased the life-insurance policy from Omaha and had named himself the beneficiary of the policy. Relying on those allegations, Mays asserted a claim of fraud against Van Diver and asserted a claim of negligent or wanton hiring, training, and supervision against American Benefit and Omaha. Mays did not seek a specific amount of damages in her complaint but, instead,

sought a judgment "in an amount that exceeds the minimal jurisdictional limits of [the circuit court] ... whether the same be compensatory or punitive."

In July 2023, Omaha filed a motion to dismiss Mays's claim against it, arguing that it "did not issue any [life-insurance] policy to [Mays] or her ex-husband." In fact, Omaha argued, the application for a life-insurance policy had not even been "submitted to Omaha; it [had been] submitted to United of Omaha Life Insurance Company, which is a different legal entity," and, according to Omaha, "United of Omaha [had] declined to issue the policy." (Emphasis omitted.) Omaha included with its motion a letter that United had sent to Mays, informing her that her application for a life-insurance policy had been denied.

There is no indication in the record that, following the filing of Omaha's motion to dismiss, any activity occurred in this case until June 2024, when the circuit court scheduled a hearing on that motion to be held the following month. It is unclear from the record whether that hearing occurred, but, in September 2024, Mays stipulated to Omaha's dismissal from the case, and the circuit court entered an order to that effect. The circuit court also scheduled a status conference to be held in

3

October 2024. Again, it is unclear from the record whether that hearing occurred, but Mays contends that it did and that, at that hearing, the circuit court "recommended [that Mays] withhold from filing a [motion for a] default judgment as such may be easily overturned." Thus, it does not appear that Van Diver was present at that hearing, and he does not contend that he was.

On April 4, 2025, the circuit court notified Mays that Van Diver and American Benefit had not yet been served with the complaint and warned her that, if she failed to perfect service within 14 days, her complaint could be dismissed. Mays apparently took no action in response to that notice, and, on April 22, 2025, the circuit court dismissed her complaint, without prejudice, for failure to perfect service. The next day, Mays filed a motion to reconsider and, in support of her motion, attached the return of service showing that Van Diver had been served with the complaint and a summons on October 6, 2023. It is undisputed that Van Diver was in fact served with the complaint and a summons by certified mail on that day.

On May 20, 2025, the circuit court held a hearing on Mays's motion to reconsider. At that time, Van Diver was not yet represented by

4

counsel, and neither he nor American Benefit appeared for that hearing. Later that day, the circuit court issued an order providing that Mays had 30 days within which to file a motion for a default judgment against Van Diver and had 60 days within which to serve American Benefit with the complaint in order to avoid the dismissal of American Benefit from the case.[1]

On June 16, 2025, Mays filed a motion for a default judgment against Van Diver, arguing that he had "failed to answer or otherwise defend as to [the] complaint" despite being served with the complaint in October 2023. Mays sought $200,000 in damages but did not explain how she had arrived at that amount. The next day, the circuit court entered a default judgment against Van Diver and awarded Mays $200,000 in damages.

On August 8, 2025, Paul M. James, Jr., entered his notice of appearance as counsel for Van Diver. That same day, pursuant to Rule

---

[1]It appears that the circuit court considered its May 20, 2025, order as an entry of default against Van Diver. See Rule 55(a), Ala. R. Civ. P.; and Justice v. Wallace, 272 So. 3d 651, 653 (Ala. Civ. App. 2018) ("'[A] party must first obtain an entry of default by the clerk or the trial court before he or she can obtain a default judgment from the trial court.'" (citation omitted)).

60(b)(1), Ala. R. Civ. P., Van Diver filed a motion to set aside the default judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." In support of his motion, Van Diver submitted his affidavit, which states, in pertinent part:

> "I am not an attorney, nor do I have legal experience. I have never defended myself pro se in any matter, either criminal or civil.
>
> "On October 6, 2023, I executed a Return on Service of the Complaint and Summons in this case, via Certified Mail.
>
> "However, at the time, I had no knowledge or understanding of the implications and consequences of this action, nor did I understand or have any knowledge of the procedural rules regarding the timeline for responding to and filing certain pleadings and filings in the present matter, or in civil court, generally.
>
> "I was unsure at that time what the term 'appear' or 'appearance' meant in the context of a civil action."

Van Diver further stated that he had had discussions with John S. Johnson, who had served as counsel for Omaha, and that those discussions had led him to believe that there was nothing he needed to do to protect himself. Specifically, Van Diver stated:

> "[When] I received [Mays's] April 23, 2025, Motion to Reconsider[,] … I interpreted this pleading to be an 'appeal' of what Johnson had described to me previously, which I understood to mean that [Mays's] case against [Omaha] and

6

myself had been dismissed -- and believed that this would result in the case going through the appeals process.

"While I am unfamiliar with the appeals process and its procedural rules and requirements, at the time I believed that, at the very least, this 'appeal' meant that I was not required to file any response or pleadings at that time.

"In an effort to ensure that I was correctly understanding the relevant pleadings and filings in this case, I attempted to contact the various attorneys serving as counsel in this case, around April or May of 2025. At that time, I was able to contact and speak with [Johnson], who informed me that he represented [Omaha].

"Johnson informed me that he had 'completed and handled everything' for [Omaha]. He reiterated to me that 'things have been taken care of' at that time.

"At the time, I did not understand the difference between the case being 'handled' as to one defendant as opposed to another, and I interpreted Johnson's statements to mean … that the case against both [Omaha] and myself was dismissed and over. As a result, I believed that there was nothing that I needed to do at that point.

"At various points throughout this litigation, I contacted several of the attorneys listed as counsel in this matter and inquired as to whether there were any hearings that I needed to attend at that time. On these occasions, I was informed by the secretaries for the law firms that I was able to make contact with that[,] at the time of my calls, … there were no hearings currently scheduled that I needed to attend.

"If at any time I had received notice of or been informed that there was a scheduled hearing, meeting, or conference at which my attendance was required, I would have made sure that I was in attendance."

7

Relying on those facts, Van Diver argued that "[i]t is clear … that [my] failure to adequately and timely respond and appear was purely the result of mistake, inadvertence, and excusable neglect." Van Diver then argued that the three factors set forth by this Court in Kirtland v. Fort Morgan Authority Sewer Service, Inc., 524 So. 2d 600 (Ala. 1988), "weigh heavily in favor of this action being adjudicated on the merits." Finally, Van Diver argued that there was no evidentiary basis for awarding Mays $200,000 in damages because "[n]o hearing was held with regard to damages, nor was there any investigation, reference to, or review of what a proper award of damages might be."

On August 11, 2025, the circuit court denied Van Diver's motion to set aside the default judgment, without stating its reasons, and Van Diver filed a timely notice of appeal.[2]

## Discussion

Van Diver argues on appeal that the circuit court erred by denying his Rule 60(b)(1) motion to set aside the default judgment. In support of

---

[2]There is no indication in the record that American Benefit has been dismissed from the case or that a judgment has been entered against it. However, for all that appears in the record, American Benefit was never served with the complaint, so the judgment against Van Diver is a final judgment that will support an appeal. See Rule 4(f), Ala. R. Civ. P.

that argument, Van Diver contends both that his motion was meritorious and that the circuit court erred by failing to hold a hearing on the issue of damages. We will address each argument in turn.

## I. The Merits of Van Diver's Motion

Van Diver first argues that the circuit court erred by denying his Rule 60(b)(1) motion to set aside the default judgment because, he says, his failure to answer the complaint or otherwise defend himself was the result of excusable neglect. Our review of this argument is governed by the following principles:

> "'It is well established that the decision to grant or to deny relief pursuant to a Rule 60(b)(1) motion is within the trial court's discretion. In reviewing the trial court's ruling on such a motion, we cannot disturb the trial court's decision unless the trial court abused that discretion. DaLee v. Crosby Lumber Co., 561 So. 2d 1086, 1089 (Ala. 1990). … [U]nder Rule 60(b)(1), a party seeking to set aside a default judgment not only must prove excusable neglect but also must satisfy the trial court that the other factors enunciated in Kirtland[ v. Fort Morgan Authority Sewer Service, Inc., 524 So. 2d 600 (Ala. 1988),] weigh in favor of setting aside the judgment. Marks v. Marks, 181 So. 3d 361, 364 (Ala. Civ. App. 2015). See also DaLee, 561 So. 2d at 1091. Those factors include a showing that the defaulting party has a meritorious defense, that the plaintiff will not be unfairly prejudiced if the default judgment is set aside, and that the default judgment was not a result of the defaulting party's own culpable conduct. Brantley v. Glover, 84 So. 3d 77, 80-81 (Ala. Civ. App. 2011) (citing Kirtland, 524 So. 2d at 605).'"

9

Farrag v. Thomas, 395 So. 3d 1038, 1044 (Ala. 2023) (quoting J.N.M.-R. v. M.D.L.-C., 380 So. 3d 395, 401 (Ala. Civ. App. 2022)).

In support of his argument, Van Diver contends that "Alabama courts have repeatedly recognized that nonlawyers' reasonable misunderstandings and reliance-based mistakes may constitute excusable neglect." Van Diver's brief, p. 29. Van Diver then notes that his affidavit indicates that he is "not an attorney" and has "[no] legal experience"; that, given his lack of legal experience, he "did not realize that signing for the certified mail containing the complaint triggered a deadline to respond, nor that the term 'appearance' meant filing a formal pleading"; that he "mistakenly viewed Mays's motion to reconsider as an 'appeal,' which he believed placed the case in abeyance"; that he "was told by co-defendant's counsel that matters had been 'taken care of'"; that he therefore "logically, but incorrectly, concluded that the entire case had been resolved"; and that, "[w]hen he called law offices and was told that 'no hearings are currently scheduled,' he believed he had no immediate obligations." Id., pp. 29-30. According to Van Diver, "[t]hese were not acts of defiance but efforts by a layman to understand a system he did

10

not know how to navigate." Id., p. 30. We are not persuaded by this argument.

In Lifestar Response of Alabama, Inc. v. Lemuel, 908 So. 2d 207 (Ala. 2004), this Court stated:

> "'In McDavid v. United Mercantile Agencies, Inc., 248 Ala. 297, 301, 27 So. 2d 499, 503 (1946), the Court set out the duty of a party when legal process is duly served upon him:
>
> > "'"It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business, his motion to set aside a judgment for default should be denied. Little v. Peevy, [238 Ala. 106, 189 So. 720 (Ala. 1939)].
> >
> > "'"Courts cannot act as guardian for parties who are grossly careless of their own affairs. All must be governed by the laws in force, universally applied, according to the showing made.
> >
> > "'"If judgment be entered against a party in his absence, before he can be relieved of the judgment he must show that it was the result of a mistake or inadvertence which reasonable care could not have avoided, a surprise which reasonable precaution could not have prevented, or a negligence which reasonable prudence could not have anticipated."'"

11

908 So. 2d at 223-24 (quoting DaLee v. Crosby Lumber Co., 561 So. 2d 1086, 1091 (Ala. 1990)). See also Womble v. Moore, 386 So. 3d 9, 12-13 (Ala. 2023) (defining "excusable neglect" as "'[a] failure ... to take some proper step at the proper time ... not because of the party's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party'" (quoting Black's Law Dictionary 1244 (11th ed. 2019))).

These principles apply with equal force to a party who is not represented by counsel. As this Court has previously explained:

> "'[T]he fact that a party was acting pro se typically does not qualify as the kind of "mistake, inadvertence, ... or excusable neglect" countenanced by [Rule 60(b)(1)],' Ex parte Branson Mach., LLC, 78 So. 3d 950, 955 (Ala. 2011), and ... a party acting pro se is charged with the duty of taking the appropriate legal steps to protect that party's interests and cannot rely on the lack of counsel as a valid ground under Rule 60(b)(1) to set aside a judgment. Id. (quoting Ex parte Spriggs Enters., 879 So. 2d 587, 591-92 (Ala. Civ. App. 2003))."

Womble, 386 So. 3d at 13. See also Ex parte Branson Mach., LLC, 78 So. 3d 950, 955 (Ala. 2011) (noting that "'[a] pro se litigant is not exempt from procedural rules merely because of an unfamiliarity with them'"

12

and that "'[t]he rules governing the operation of the courts of this state are no more forgiving to a pro se litigant than to one represented by counsel'" (citation omitted)).

In this case, Van Diver was served with Mays's complaint and a summons on October 6, 2023, yet he did not take <u>any action of any kind</u> in this case until August 8, 2025, when he filed his motion to set aside the default judgment. Thus, for a period of 22 months -- almost 2 years -- after being served with the complaint and a summons, Van Diver made no attempt whatsoever to defend himself against Mays's fraud claim and, instead, waited <u>more than 7 weeks after the default judgment had been entered</u> before he made his initial appearance in the case. The facts of this case therefore indicate that the default judgment was not the result of Van Diver's excusable neglect but, instead, was the result of the fact that he was "'"grossly careless of [his] own affairs."'" <u>Lemuel</u>, 908 So. 2d at 224 (citations omitted). As noted, Van Diver's alleged lack of legal experience does not excuse his inattention to his affairs. <u>Womble</u>, <u>supra</u>.

Van Diver argues, though, that his inattention to his affairs was not merely the result of his lack of legal experience. According to Van Diver, he also reasonably relied on Omaha's counsel's statements that he

13

(counsel) "had 'completed and handled everything'" and "that 'things ha[d] been taken care of.'" Van Diver then cites <u>Lightner Investigators, Inc. v. Goodwin</u>, 447 So. 2d 679, 681 (Ala. 1984), in which this Court reversed a default judgment after concluding that the appellants had "reasonably believed and relied on [the] representation [of a codefendant's employee] that <u>all</u> defendants would be represented by the lawyer for [the codefendant]." However, even if his reliance on Omaha's counsel's statements was reasonable, Van Diver conceded in his affidavit that the statements had occurred "around April or May of 2025." Thus, Van Diver's reliance on those statements does not explain his failure to make any attempt to defend himself from October 6, 2023, to "April or May of 2025" -- a period of at least 18 months.[3]

In short, even if we ignore Van Diver's inactivity from the point of his discussions with Omaha's counsel, the fact remains that, for 18 months following his receipt of the complaint and a summons, Van Diver

---

[3]Van Diver also stated in his affidavit that, "[a]t various points throughout this litigation, [he] contacted several of the attorneys listed as counsel" and was told "at the time of [his] calls[] that there were no hearings currently scheduled that [he] needed to attend." However, Van Diver did not indicate at which "points" in the proceedings these alleged contacts occurred, so there is no evidence to support a finding that he had relied on the representations of others before April 2025.

made no attempt whatsoever to defend himself against Mays's fraud claim or to otherwise make an appearance in this case. The only argument Van Diver has provided for his inactivity during those 18 months is his lack of legal experience, which does not constitute excusable neglect for purposes of Rule 60(b)(1). Thus, this Court cannot say that the circuit court exceeded its discretion by denying Van Diver's motion to set aside the default judgment.

We acknowledge Van Diver's argument that the circuit court erred by failing to consider the <u>Kirtland</u> factors before ruling on his motion to set aside the default judgment. However, this Court has explained that a trial court is under no obligation to consider the <u>Kirtland</u> factors unless the movant establishes a Rule 60(b) ground for relief, and, as we have already explained, Van Diver has not demonstrated that the circuit court exceeded its discretion on that point. Thus, this argument does not entitle Van Diver to relief from the default judgment. <u>See</u> <u>Farrag</u>, 395 So. 3d at 1046 ("[B]ecause the trial court concluded that Dr. Farrag had not demonstrated that his failure to defend the malpractice action was due to excusable neglect under Rule 60(b)(1), it was not necessary for the trial court to also weigh the <u>Kirtland</u> factors.").

15

## II. The Lack of a Hearing

Van Diver next argues that the default judgment must be set aside because the circuit court did not hold a hearing on the issue of damages.[4] Regarding the damages awarded in a default judgment, Rule 55(b)(2), Ala. R. Civ. P., states, in pertinent part:

> "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court <u>may</u> conduct such hearings or order such references as it deems necessary and proper …."

(Emphasis added.) Van Diver acknowledges that, with respect to the issue of the damages awarded in a default judgment, Rule 55(b)(2) provides that a hearing is discretionary, but he argues that this discretion does not authorize a court to award damages without making

---

[4]To the extent that Van Diver argues that the circuit court erred by entering the default judgment without holding a hearing, he failed to preserve that argument for appellate review because he did not raise it below. See <u>Ex parte Coulliette</u>, 857 So. 2d 793, 794 (Ala. 2003) ("'An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.'" (citation omitted)). Regardless, Rule 55(b)(2), Ala. R. Civ. P., provides that a trial court is required to hold a hearing on a motion for a default judgment only "[i]f the party against whom judgment by default is sought has appeared in the action." In this case, Van Diver had not appeared in the action at the time Mays moved for a default judgment, so the circuit court was not required to hold a hearing before entering that judgment.

some inquiry as to the proper amount of damages. In support of that argument, Van Diver relies on J & P Construction Co. v. Valta Construction Co., 452 So. 2d 857 (Ala. 1984).

In J & P Construction, Valta Construction Co. ("Valta") filed a complaint in the Baldwin Circuit Court against J & P Construction Co. ("J & P"), asserting claims of breach of contract, work and labor done, and fraud. After J & P failed to timely appear in the action, Valta moved for a default judgment and requested $42,665 in damages. The circuit clerk entered the default, and the trial court subsequently issued a default judgment and awarded Valta its requested damages. J & P then moved the trial court to set aside the default judgment pursuant to Rule 60(b), and it appealed to this Court after the trial court denied the motion.

On appeal, this Court began its analysis by noting that, pursuant to Rule 55(b)(1), when a default has been entered based on the defendant's failure to appear, either the circuit clerk or the trial court may enter a default judgment "[i]f the claim is for a sum certain or for a sum which can by computation be made certain." 452 So. 2d at 859. The Court then provided

> "[e]xamples of cases which are properly treated as claims for
> amounts which are certain or are capable of being made

17

certain by computation[, which] include such claims as actions based on life insurance policies, actions for the recovery of deposits, actions for the face amounts of notes, and claims based on other liquidated sums."

Id. In such cases, the Court explained, "it would not be necessary to make an inquiry into the amount of damages." Id. at 860. The Court clarified, though, that, "[i]n other cases, … the court should not enter a judgment without first determining the amount of damages." Id. The Court acknowledged that Rule 55(b)(2) provides a circuit court with discretion in determining whether to hold a hearing on the issue of damages. However, the Court explained that,

> "[a]lthough the rule states that the court 'may' hold hearings, the discretion bestowed by the rule is not so great as to entirely vitiate the need for any sort of inquiry into the amount of damages where the claim is not for a sum which is certain or is capable of being made certain by computation."

Id. (emphasis added). Thus, because the Court concluded that Valta's claims were not "the sort of claim[s] which could have been properly dealt with under Rule 55(b)(1)," id. at 859, i.e., claims for a sum certain or a sum that was capable of being made certain by computation, the Court reversed the default judgment -- but not the entry of the default -- and remanded the case "for a hearing to determine the amount of damages." Id. at 860.

18

This Court reached the same conclusion in <u>Martin v. Robbins</u>, 628 So. 2d 614 (Ala. 1993). There, the defendant, who had been sued for allegedly committing fraud, conspiracy, and collusion, argued "that the default judgment was invalid because the trial court entered an award of $2,000,000 in damages without a hearing on the actual harm or loss suffered." <u>Id.</u> at 618. After once again noting the discretion provided by Rule 55(b)(2), this Court "emphasize[d] … that the discretion bestowed by the rule is not so great as to obviate the need for any sort of inquiry into the amount of damages where the claim is not for a sum certain or a sum capable of being made certain by computation." <u>Id.</u> Thus, because the plaintiff's claims in that case were not such claims and because no such inquiry had occurred, this Court held that the trial court's award of damages could not stand. The Court was careful to clarify, though, that the failure to hold a hearing did not render the default judgment void -- only the award of damages. Consequently, the Court "affirm[ed] the judgment insofar as it impose[d] liability on" the defendant but "reverse[d] as to the amount awarded" and "remanded for an evidentiary hearing on the amount of damages." <u>Id.</u> <u>See also</u> <u>Ex parte Ward</u>, 264 So. 3d 52 (Ala. 2018) (issuing a writ of mandamus directing the trial court to

19

vacate its order setting aside a default judgment and instructing the court to hold a hearing to determine damages after reinstating the judgment).

This case is similar to both J & P Construction and Martin. Mays's fraud claim against Van Diver was not "for a sum certain or for a sum which can by computation be made certain." Rule 55(b)(1). In fact, this Court indicated in J & P Construction that fraud claims generally do not qualify as such claims, 452 So. 2d at 859-60, and, indeed, Mays did not seek a specific amount of damages in her complaint. See also Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (holding that, with respect to a fraud claim that had been disposed of by a default judgment, a hearing was required on the issue of damages because the claim was not "capable of ascertainment from definite figures"). Mays did request $200,000 in damages in her motion for a default judgment -- just as the movant sought a specific amount of damages in its motion in J & P Construction -- but she did not support that request with any evidence.[5] Thus, before awarding Mays damages,

---

[5]Mays's motion included an affidavit from her attorney, but that affidavit did not speak to the issue of damages.

20

the circuit court was required "to make an inquiry into the amount of the damages." J & P Constr., 452 So. 2d at 860. As this Court explained in both J & P Construction and Martin, "the discretion bestowed by [Rule 55(b)(2)] is not so great as to obviate the need for any sort of inquiry into the amount of damages where the claim is not for a sum certain or a sum capable of being made certain by computation." Martin, 628 So. 2d at 618. Because no such inquiry occurred in this case, the circuit court's award of $200,000 in damages cannot stand.

Conclusion

Van Diver has not demonstrated that the circuit court exceeded its discretion by refusing to set aside the default judgment entered against him, and the court's failure to hold a hearing on the issue of damages does not entitle Van Diver to relief from liability. Thus, "[w]e affirm the judgment insofar as it imposes liability on [Van Diver]." Martin, 628 So. 2d at 618. However, in accord with J & P Construction and Martin, we reverse the judgment "as to the amount awarded" to Mays and remand the case to the circuit court for that court to hold "an evidentiary hearing on the amount of damages." Id. Following that hearing, the circuit court

21

should enter a new default judgment in which it bases the award of damages on the evidence presented at that hearing.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Stewart, C.J., and Shaw, Bryan, and Mendheim, JJ., concur.